John **ANELLI** and Joan Anelli, his wife, Appellants,

v.

**ARROWHEAD LAKES COMMUNITY ASSOCIATION, INC.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.
Decided Feb. 13, 1997.

---

Timothy B. Fisher, Mount Pocono, for appellants.

Mary Theresa McCarthy, Hawley, for appellee.

Before PELLEGRINI and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

KELLEY, Judge.

John Anelli and Joan Anelli (the Anellis) appeal from a March 11, 1996 order of the Court of Common Pleas of Monroe County (trial court).[1] The trial court's order sustained preliminary objections filed by Arrowhead Lakes Community Association (Association) to a complaint in equity filed by the Anellis and dismissed the complaint with prejudice. We affirm.

The Anellis took title by deed dated April 16, 1990, to a lot in the Arrowhead Lakes Development, Tobyhanna Township, Monroe County, Pennsylvania. The Anellis purchased the property subject to certain deed restrictions which are common to all lots within the development. The Association is charged with the enforcement of the deed restrictions. To enforce the restrictions, the Association utilizes the use of citations, fines and penalties levied or assessed upon property owners of the lots in the development. Restriction No. 13 provides that "[n]o signs of any type, including for sale signs, shall be erected or maintained on the premises." Reproduced Record (R.) at 21a.

---

1. We note that the Anellis initially filed an appeal from the March 11, 1996 order and a March 19, 1996 with the Superior Court. The March 19, 1996 order of the trial court denied the Anellis' request for reconsideration of the March 11, 1996 order. Upon transfer of the appeal to this court, an order was entered quashing the appeal of the March 19, 1996 order at Docket No. 2451 C.D.1996 as that order was not appealable. Consequently, the only appeal before this court is the appeal of the March 11, 1996 order at Docket No. 2450 C.D.1996.

In the spring of 1994, the Anellis placed a "For Sale" sign in the window of their residence. Thereafter, the Association wrote four letters to the Anellis informing them that they were prohibited by the deed restrictions from displaying a "For Sale" sign inside their house. The Association also levied fines totalling $250.00 on the Anellis for placing the "For Sale" sign on their premises.

The Anellis paid $25.00 and appealed the first fine to the disciplinary committee of the Association. After a hearing, the disciplinary committee upheld the initial fine and found that the use of a "For Sale" sign in the window of the Anellis' premises was in violation of the deed restrictions.

In September 1995, the Anellis erected and maintained for two days a sign in the yard of their premises advertising a yard sale. Approximately one week later, the Association notified the Anellis that this sign was in violation of the deed restrictions and assessed the Anellis a $25.00 fine. The Anellis have not paid this $25.00 fine.

On or about December 4, 1995, the Anellis filed a two count complaint in equity against the Association pursuant to 42 U.S.C. §§ 1983 and 1988. The Anellis alleged that the Association had violated the Anellis' civil rights by depriving the Anellis of their right to freedom of expression and their right to freely alienate or sell their property. The Anellis sought to enjoin the Association from enforcing the deed restrictions and levying any fines in connection therewith, as well as costs and attorneys fees.

On or about December 26, 1995, the Association filed preliminary objections to the Anellis' complaint. The Association sought a demurrer on the following grounds: (1) the complaint failed to allege any action by the Association under the color of state law as required by section 1983; (2) the complaint failed to allege any governmental action by the Association; and (3) the complaint failed to plead the requisite allegations for injunctive relief. In the alter-

native, the Association sought to strike a section of the complaint and requested a more specific pleading.

Argument on the Association's preliminary objections was held before the trial court on February 5, 1996, after which the trial court sustained the preliminary objections and dismissed the Anellis' complaint with prejudice. The trial court determined that the Association was a private association in no way connected with the state; therefore, the Association does not constitute a state actor. The trial court rejected the Anellis' argument that the Association became a state actor when it was incorporated pursuant to the laws of the Commonwealth. The trial court opined that Pennsylvania, through its corporation laws, plays no role in the drafting or enforcement of the Association's deed restrictions. This appeal followed.

■■■ Initially, we note that our scope of review of a challenge to the sustaining of preliminary objections in the nature of a demurrer is to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). We must accept as true all well pled allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.* Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992).

On appeal, the Anellis raise three issues for our review: [2]

1. Whether the Association, a Pennsylvania non-profit corporation, which was created and operates under Pennsylvania Nonprofit Corporation Law, 15 Pa.C.S. §§ 5101—6162, is a state actor or an entity which is operating under the color of state

---

2. The Anellis, in their brief, set forth four issues for our review. However, the final issue deals with the trial court's March 19, 1996 order denying the Anellis' request for reconsideration or, in the alternative, leave to amend their complaint. Because the appeal of the March 19, 1996 order was quashed, the last issue will not be addressed herein.

law within the meaning of 42 U.S.C. § 1983.

2. Whether the complaint states a valid cause of action in equity against the Association for violating the Anellis' constitutional rights of freedom in property alienation and freedom of expression in prohibiting the Anellis' use of "For Sale" signs.

3. Whether the Anellis, by purchasing the property, subject to the deed restriction prohibiting signs on the property, affirmatively waived or released their right to sell the property by placing a "For Sale" sign on the property.

Section 1983, 42 U.S.C. § 1983, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

■ To state a claim under section 1983, a plaintiff (1) must allege a violation of rights secured by the United States Constitution and the laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

■ We note that the Anellis admit in Paragraph 21 of their complaint that the Association is not a governmental agency or a municipality. R. at 9a. Notwithstanding this averment, the Anellis argue that the Association acts under the color of state law.

The Anellis allege that the Association was created and organized under the nonprofit corporation laws of Pennsylvania. As such, the Anellis contend, the Association has the authority pursuant to state law, to adopt bylaws, operate its business, own and acquire property, and transfer property interests. Consequently, the Anellis argue, because the Association can only operate through its charter and bylaws pursuant to the provisions of the Pennsylvania Nonprofit Corporation Law, it acts under the color of state law. Therefore, the Anellis contend, Counts I and II of their complaint states a claim under section 1983 as their right to sell their real and personal property, is being abridged by the Association's discriminatory actions in enforcing the "For Sale" sign prohibition.

To support their position, the Anellis rely on the United States Supreme Court's decision in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). According to the Anellis, the United States Supreme Court in *Moose Lodge* held that there was state action because the Pennsylvania Liquor Control Board, pursuant to its regulations, required the lodge to act in accordance with its charter and its bylaws which contained discriminatory clauses. Here, the Anellis argue the Association is similarly bound by statute and its bylaws to enforce the deed restrictions of the development, which contain an absolute ban on all signs including "For Sale" signs. The Anellis allege that the Association is enforcing the deed restriction in a discriminatory manner, against a select few, including the Anellis.

A thorough review of the United States Supreme Court's decision in *Moose Lodge* reveals that the Anellis reading of the holding in that case is conveniently limited to one section and ignores the remainder of the court's decision. In fact, the United States Supreme Court's decision in *Moose Lodge* actually supports the affirmance of the trial court's order in this case.

In *Moose Lodge,* the court was called upon to determine whether the lodge's guest service practices violated the Fourteenth Amendment of the United States Constitution. The appellee, Irvis, a black man, was refused service by Moose Lodge, No. 107, a local branch of the national fraternal organization located in Harrisburg. Before the Supreme Court, Irvis conceded the right of private clubs to choose members upon a discriminatory basis; however, Irvis argued that the licensing of the Moose Lodge to serve liquor by the Pennsylvania Liquor Control Board (PLCB) amounted to such state involvement with the club's activities as to make its discriminatory practices forbid-

den by the Equal Protection Clause of the Fourteenth Amendment. Irvis sought and obtained in the district court injunctive relief forbidding the licensing by the PLCB of the lodge until the lodge ceased its discriminatory practices. The Supreme Court reversed and held that the lodge's refusal to serve Irvis because he was black, did not, under the circumstances presented, violate the Fourteenth Amendment. *Moose Lodge,* 407 U.S. at 172, 92 S.Ct. at 1971.

The United States Supreme Court pointed out that it never held that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulations in any degree whatever. *Id.* at 173, 92 S.Ct. at 1971–72. The court stated that "[o]ur holdings indicate where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' in order for the discriminatory action to fall within the ambit of the constitutional provision." *Id.* (citation omitted).

With one exception, the court held that there was no suggestion in the record that the Pennsylvania statutes and regulations governing the sale of liquor were intended either to overtly or covertly encourage discrimination. *Id.* The court stated that:

> With the exception hereafter noted, the Pennsylvania Liquor Control Board plays absolutely no part in establishing or enforcing the membership or guest policies of the club that it licenses to serve liquor. There is no suggestion in this record that Pennsylvania law, either as written or as applied, discriminates against minority groups either in their right to apply for club licenses themselves or in their right to purchase and be served liquor in places of public accommodation. The only effect that the state licensing of Moose Lodge to serve liquor can be said to have on the right of any other Pennsylvanian to buy or be served liquor on premises other than those of Moose Lodge is that for some purposes club licenses are counted in the maximum number of licenses that may be issued in a given municipality. . . .

> However, detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise. . . . We therefore hold that, with the exception hereafter noted, the operation of the regulatory scheme enforced by the Pennsylvania Liquor Control Board does not sufficiently implicate the State in the discriminatory guest policies of Moose Lodge to make the latter "state action" within the ambit of the Equal Protection Clause of the Fourteenth Amendment.

*Id.* at 175–77, 92 S.Ct. at 1972–73 (footnote omitted).

The one exception that the Supreme Court took issue with, and the part of the decision relied upon by the Anellis herein, was a single regulation of the PLCB which required that every club licensee shall adhere to all the provisions of its constitution and bylaws. The court stated that even though this state regulation was neutral in its terms, the result of its application in a case where the lodge's constitution and bylaws required racial discrimination would be to invoke the sanctions of the State to enforce a concededly discriminatory private rule. *Id.* at 178, 92 S.Ct. at 1974. State action, the court pointed out, for purposes of the Equal Protection Clause, may emanate from rulings of administrative and regulatory agencies as well as from legislative or judicial action, and that the application of state sanctions to enforce such a rule would violate the Fourteenth Amendment. *Id.* at 179, 92 S.Ct. at 1974. Accordingly, the United States Supreme Court held that Irvis was entitled to a decree enjoining the enforcement of this particular regulation by the PLCB, insofar as that regulation required compliance by the lodge with provisions of its constitution and bylaws containing racially discriminatory provisions, but that Irvis was entitled to no more. *Id.*

As in *Moose Lodge,* there is a regulatory scheme in this case. The regulatory scheme governs the creation and organization of nonprofit corporations in Pennsylvania. *See* Nonprofit Corporation Law, 15 Pa.C.S.

§§ 5101—6162. A review of the law compels this court to hold that the regulatory scheme does not sufficiently implicate the Commonwealth in the discriminatory practices allegedly invoked by the Association in enforcing the deed restriction prohibiting "For Sale" signs on property owners' lots so as to make the Association's alleged actions "state action." While the regulation of nonprofit corporations in Pennsylvania is detailed in some particulars, as was stated in *Moose Lodge,* this regulation cannot be said to, in any way, foster or encourage the discriminatory practices which the Anellis allege the Association has engaged in with respect to the enforcement of the deed restriction.

Clearly, the requirements of the Commonwealth governing nonprofit corporations do not suggest that the Commonwealth discriminates against property owners and their rights to freedom of expression or to freely sell their property. The provisions found in the Nonprofit Corporation Law which require the Association to abide by their by-laws clearly falls far short of significantly involving the Commonwealth with invidious discriminations which may be committed by a private nonprofit corporation such as the Association. *See* 15 Pa.C.S. §§ 5504; 5505.

Consequently, we reject the Anellis' argument that the Commonwealth plays a part in establishing or enforcing the deed restrictions or covenants of the Association because the Association is a private nonprofit corporation created and organized under the Nonprofit Corporation Law. Therefore, we cannot hold that the Association's alleged discriminatory actions, with respect to the enforcement of the deed restriction prohibiting signs, were taken under the color of state law.

Accordingly, the trial court properly sustained the Association's preliminary objections and dismissed the Anellis' complaint with prejudice because the Anellis failed to allege facts sufficient to state a cause of action pursuant to 42 U.S.C. § 1983. The trial court's order is affirmed.[3]

---

3. Due to our disposition of the first issue raised on appeal by the Anellis, we need not specifically address the remaining two issues.

*ORDER*

NOW, this 13th day of February, 1997, the order of the Court of Common Pleas of Monroe County, dated March 11, 1996, at No. 3128 Civil 1995, is affirmed.

PELLEGRINI, J., concurs in the result only.