**Salvatore CHIMENTI, Susan L. Borish, and Hans Vorhauer, Petitioners,**

**v.**

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Nov. 9, 1998.

---

James D. Crawford, Philadelphia, for petitioners.

Timothy D. Mara, Camp Hill, for respondent.

Before SMITH and KELLEY, JJ., and McCLOSKEY, Senior Judge.

KELLEY, Judge.

Presently before this court for disposition are the preliminary objections of the Pennsylvania Department of Corrections (department) to the petition for review filed by Salvatore Chimenti, Susan L. Borish, and Hans Vorhauer [1] (petitioners).

On October 6, 1997, petitioners filed *pro se* in this court's original jurisdiction a four-count petition for review seeking equitable and declaratory relief.[2] In Count I of their petition for review, petitioners request that this court enjoin the department from implementing policy statement DC–ADM 818 governing the automated inmate telephone system.[3] Petitioners allege that the General Assembly empowered the department to intercept, record, and disclose the telephone communications between inmates and members of the public by the Act of September

---

**1.** Mr. Chimenti and Mr. Vorhauer are currently inmates at the State Correctional Institution at Huntington, Pennsylvania. Ms. Borish is a private citizen.

**2.** In their brief in opposition to the preliminary objections, petitioners state that Counts III and IV of the petition for review are not being pursued. Count III alleges that the regulations embodied in DC–ADM 818 deny petitioners due process and equal protection as well as the rights of free speech, association, and abridgement of religion. Count IV alleges that the department has executed a contract with an unknown named company to provide telephone services to inmates, and that said contract requires the unknown company to kick back a percentage of their profits to the department constituting a hidden tax on the members of the public who accept collect calls from inmates.

**3.** Pursuant to policy statement DC–ADM 818, the automated inmate telephone system is a computer based telephone system which enables the department to control the use of inmate telephones. *See* Exhibit A to petition for review. Policy Statement DC–ADM 818 became effective November 1, 1997. *Id.*

26, 1995, P.L. 1056.[4] Petitioners allege further that the department was directed by the General Assembly to promulgate guidelines to implement the provisions of section 5704 of the Wiretapping Act and Electronic Surveillance Control Act (Wiretapping Act), 18 Pa.C.S. § 5704.

Petitioners allege that the stated purpose of policy statement DC–ADM 818 is to promulgate rules, regulations and procedures governing inmate telephone privileges and the electronic surveillance of inmate phone calls. Therefore, petitioners allege, policy statement DC–ADM 818 is a regulation which the department has failed to lawfully promulgate in accordance with the act commonly referred to as the Commonwealth Documents Law[5] and the Regulatory Review Act.[6] As a result, Petitioners allege that the department has implemented regulations that affect the substantial rights of the members of the public without notice or opportunity to be heard.[7]

In Count II of the petition for review, petitioners allege that the department has failed to lawfully promulgate regulations to implement the provisions of section 5704 of the Wiretapping Act as directed by the General Assembly. Specifically, petitioners allege that the department "has failed to promulgate regulations which limit the con-

---

**4.** This act amended section 5704 of the Wiretapping and Electronic Surveillance Act, 18 Pa.C.S. § 5704, by adding a paragraph to read:

It shall not be unlawful under this chapter for:

\* \* \*

(13) An investigative officer, a law enforcement officer or employees of the Department of Corrections for State correctional facilities to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility under the following conditions:

(i) The Department of Corrections shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging any telephone calls from or to an inmate in a State correctional facility as provided for by this paragraph:

(A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.

(B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee shall have access to that recording.

(C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

(ii) So as to safeguard the attorney-client privilege, the Department of Corrections shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney.

(iii) Persons who are calling in to a facility to speak to an inmate shall be notified that the call may be recorded or monitored.

(iv) The Department of Corrections shall promulgate guidelines to implement the provisions of this paragraph for State correctional facilities.

Section 2907 of the Public Utility Code, 66 Pa.C.S. § 2907, entitled State correctional institutions, provides as follows:

(a) **Identification of calls.**–Telecommunication service providers which provide telecommunications services to State correctional institutions shall identify to the called party any call made by an inmate as originating from a correctional institution.

(b) **Collect calls.**–

(1) All calls made by inmates shall be collect calls only.

(2) Notwithstanding paragraph (1), in the case of an emergency, the superintendent may authorize a phone call to be made under the supervision of staff. The charge for the call shall be borne by the inmate.

**5.** Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102–1602.

**6.** Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1–745.15.

**7.** On November 7, 1997, petitioners filed an application for special relief in the nature of a preliminary injunction. Therein, petitioners asked this court to preliminarily enjoin DOC from: (1) giving any force or effect to the department's policy statement known as DC–ADM 818 governing the automated inmate telephone system; (2) monitoring or recording any telephone calls placed by an inmate from a correctional institution to an attorney; (3) enforcing any regulation that prohibits two or more inmates from telephoning the same telephone number; and (4) enforcing any regulation that restricts level four inmates to three 15 minute telephone calling blocks per week. After a hearing, this court denied the application by order of April 8, 1998, on the basis, *inter alia*, that DC–ADM 818 was a statement of policy rather than a regulation; therefore, policy statement DC–ADM 818 was not subject to the regulatory review process.

versations which may be recorded, which limit how long those records may be retained, or which limit the persons who may listen to those recordings, and the disposal of recordings." Petition for Review, Count II, Paragraph 18(a). In addition, petitioners allege that the department "has failed to identify specifically by whom or how telephone calls will be recorded, the basis for so doing, notice to the member of the public and/or inmate that his conversations have been recorded and the use made thereof, opportunity to object, and a method of review, or a system of accountability for those persons who record, monitor or divulge private communications which do not violate any laws." Petition for Review, Count II, Paragraph 18(b).

On December 2, 1997, the department filed preliminary objections to the petition alleging therein that petitioners have failed to state a claim upon which relief may be granted.

Initially, we note that what is presently before this court is the department's preliminary objections in the nature of a demurrer. Contrary to petitioners' arguments in their brief in opposition to the preliminary objections, this court is not reviewing whether the court erred in denying petitioners' preliminary injunctive relief or whether the petitioners are entitled to permanent injunctive relief. The question before this court is whether this court should grant the department's preliminary objections and dismiss the petition for review for failure to state a claim.

▮▮▮ In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Meier v. Maleski*, 167 Pa. Cmwlth. 458, 648 A.2d 595 (Pa.Cmwlth.1994). The court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that

the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.* With these standards in mind, we consider the department's preliminary objections.

The department objects to Counts I and II of the petition for review on the basis that petitioners have failed to state a claim for which relief may be granted. The department avers the DC–ADM 818 is not a regulation as defined by the Commonwealth Documents Law and the Regulatory Review Act. Rather, the department alleges, DC–ADM 818 is a statement of policy; therefore, the department was under no legal obligation to submit DC–ADM 818 to the regulatory review process described in the Regulatory Review Act and the Commonwealth Documents Law.

The Commonwealth Documents Law requires an agency to give public notice of its intention to promulgate, amend or repeal any administrative regulation. Section 201, 45 P.S. § 1201. Pursuant to the Commonwealth Documents Law, regulation means

> any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.

Section 102, 45 P.S. § 1102.[8] Statement of policy is defined in the Commonwealth Documents Law as

> any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency.

*Id.*

▮▮▮ In *Central Dauphin School District v. Department of Education*, 147 Pa.Cmwlth.

---

**8.** A similar definition of regulation is found in the Regulatory Review Act which defines regulation, in pertinent part, as "[a]ny rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency." Section 3, 71 P.S. § 745.3.

426, 608 A.2d 576 (1992), this court set forth the distinction between a regulation and a policy statement.

A regulation is a governmental agency's exercise of delegated legislative power to create a mandatory standard of behavior.... A regulation is binding on a reviewing court if it conforms to the grant of delegated power, is issued in accordance with proper procedures, and is reasonable. In contrast, a statement of policy is a governmental agency's statutory interpretation, which a court may accept or reject depending upon how accurately the agency's interpretation effects the meaning of the statute.

*Central Dauphin*, 608 A.2d at 580–81 (citations and footnote omitted). Also in *Central Dauphin*, this court pointed out our Supreme Court's explanation of the distinction between a regulation and a policy statement.

As emphasized by the Supreme Court of Pennsylvania in *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 374 A.2d 671 (1977),

[t]he critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings.... A properly adopted substantive rule establishes a standard of conduct which has the force of law.... The underlying policy embodied in the rule is not generally subject to challenge before the agency.

A general statement of policy, on the other hand, does not establish a 'binding norm'.... A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued.

*Id.* 608 A.2d at 581 quoting *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 350, 374 A.2d 671, 679 (1977). This court elaborated on the Supreme Court's distinction by explaining that a

'[b]inding norm' means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation.... [I]n determining whether an agency action is a regulation or a statement of policy, one must look to the extent to which the challenged pronouncement leaves the agency free to exercise discretion to follow or not follow the announced policy in an individual case.

*Department of Environmental Resources v. Rushton Mining Co.*, 139 Pa.Cmwlth. 648, 591 A.2d 1168, 1173 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).

In its brief in support of the preliminary objections, the department argues that, in accordance with the statutory definitions and case law, DC–ADM 818 is a statement of policy, not a regulation. The department is specifically directed by the General Assembly to promulgate *guidelines* to implement the provisions of the Wiretapping Act relating to state correctional facilities. 18 Pa.C.S. § 5704(13)(iv). Guidelines are more accurately defined as policy and procedures and are promulgated to give guidance and direction in this instance to inmates and staff. DC–ADM 818 was promulgated by the department in response to this directive and accurately reflects the intent of the General Assembly in its delegation of general administrative powers to the department.

The department argues further that DC–ADM 818 was not drafted solely to provide direction to inmates, but also to instruct subordinate employees with respect to the exercise of the discretion vested in the department by the General Assembly or, in other instances, to restrict the discretionary authority of prison personnel to avoid widely different or disparate treatment of inmates with respect to similar activity. DC–ADM 818 is the department's effort to provide consistent and timely guidance to inmates and staff concerning inmates access to, and use of telephones and to comply with the requirements of the Wiretapping Act. DC–ADM 818 allows for the exercise of discretion on the part of department employees in determining which instances strict adherence to

the policy is necessary and when exceptions should be permitted. For example, the policy prohibits the use of the same numbers on multiple inmate personal identification number[9] lists at individual facilities; however, exceptions may be permitted at the discretion of the facility manager or designee if an inmate establishes that a family relationship exists between them.

Finally, the department argues that petitioner Borish's argument that the department's alleged unlawful promulgation of DC–ADM 818 has violated her right to notice and opportunity to be heard must fail. Petitioner Borish has no constitutional right against the interception, monitoring, recording and divulging of her phone calls with inmates. The Wiretapping Act creates an explicit exception to the otherwise blanket protections afforded Borish by the Fourth Amendment to the United States Constitution and Article I, section 8 of the Pennsylvania Constitution. *See* section 5704 of the Wiretapping Act, 18 Pa. C.S. § 5704. In addition, the fact that petitioner Borish must pay for a collect call from an inmate does not violate any alleged property or liberty interest. The department has rationally determined that inmates cannot pay for their own calls without threatening Pennsylvania's state prisons.

In response, petitioners argue that DC–ADM 818 is an administrative regulation subject to the publication requirements of the Commonwealth Documents Law and Regulatory Review Act and is not merely a statement of policy. DC–ADM 818 is a binding norm leaving the department with little or no discretion in its actions. The stated purpose of DC–ADM 818 is to promulgate rules, regulations, and procedures governing inmate telephone privileges and the electronic surveillance of inmate phone calls. The language, form and comprehensiveness of DC–ADM 818 illustrate that it is intended to be a regulation.

Petitioners argue further that the department's own policy on inmate/public interaction with inmates, publicly promulgated and enforceable in the Pennsylvania Code, 37 Pa. Code § 93.1, requires DC–ADM 818 to be issued, published and codified as a regulation. The General Assembly mandated public promulgation of DC–ADM 818 when it amended the Wiretapping Act and directed the department to promulgate "guidelines". In addition, public policy favors public promulgation and codification of DC–ADM 818. DC–ADM 818 must be considered a regulation because it creates a standard of conduct under the Wiretapping Act that has the force of the law.

Finally, petitioners argue that the department's failure to publicly promulgate DC–ADM 818 violates the due process rights of petitioners, particularly Ms. Borish, who had no notice or opportunity to object to the policy statement.

This court believes, based on the provisions of the Wiretapping Act, the statutory definition of regulation as found in the Commonwealth Documents Law and the Regulatory Review Act, and case law defining what is considered a regulation, that policy statement DC–ADM 818 is not a regulation but a statement of policy. DC–ADM 818 clearly sets forth the department's statutory interpretation of the mandatory provisions of section 5704 of the Wiretapping Act. The policy statement notifies the inmates of general access to the system and the procedure for obtaining telephone privileges as well as the restrictions. Policy statement DC–ADM 818 does not replace or extend the authority of the department under section 5704 of the Wiretapping Act to monitor, record, intercept or divulge telephone calls from or to an inmate in a state correctional facility.

Moreover, DC–ADM 818 does not establish a standard of conduct, which has the force of law nor does it establish a binding norm. The department has the ability when applying DC–ADM 818 to a particular situation to support the policy just as if the policy statement had never been issued. The provisions of section 5704 of the Wiretapping Act specifically permit the state correctional facilities to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility with the exception, of

---

9. An inmate personal identification number is a unique set of six digits assigned to individual inmates which enables them to access the automated inmate telephone system.

course, of telephone conversations between inmates and their attorneys. Section 5704 also limits who, within the state correctional facilities, may have access to an intercepted or recorded telephone conversation. Section 5704 mandates that the contents of such a conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

Therefore, based on the statutory provisions of section 5704 of the Wiretapping Act, there is adequate support for the department's intercepting, monitoring, or divulging of a telephone conversation between an inmate and a member of the general public notwithstanding the existence of DC–ADM 818. In addition, policy statement DC–ADM 818 does grant the authorities at the state correctional facilities discretion in applying the policy in an individual case. As pointed out by the department, the authorities may grant inmates permission to call the same telephone numbers under certain conditions.

■ Accordingly, we hold that DC–ADM 818 is not a regulation but instead, is a statement of policy. As stated previously herein, only regulations are required to be promulgated in accordance with the Commonwealth Documents Law and the Regulatory Review Act. As we have concluded that DC–ADM 818 is not a regulation but a statement of policy, it need not be promulgated in accordance with the regulatory review process.

In Count II of the petition for review, petitioners allege that the department has failed to lawfully promulgate regulations, as directed by the General Assembly in section 5704 of the Wiretapping Act, which: (1) limit the conversations which may be recorded; (2) limit the persons who may listen to those recordings; (3) govern the disposal of those recordings; (4) identify by whom or how the telephone calls will be recorded; (5) provide notice to the public and/or inmate that his conversations have been recorded and the use made thereof; (6) opportunity to object; (7) a method of review; or (8) a system of accountability for those persons who record,

monitor or divulge private communications which do not violate any laws.

■ We recognize that section 5704 of the Wiretapping Act instructs the department to "promulgate" guidelines to implement the provisions of this paragraph. This court also recognizes that "promulgate" generally means to make known by open declaration or proclaim. See Webster's Third New International Dictionary 1816 (1986). However, the fact that section 5704 states that the department shall promulgate guidelines does not automatically convert into a mandate that the department promulgate regulations in accordance with the regulatory review process. What the Wiretapping Act requires is that before the implementation of section 5704, all inmates of a facility shall be notified in writing that their telephone conversations may be intercepted, recorded, monitored or divulged. Herein, the department has abided by the Wiretapping Act's mandate promulgating policy statement DC–ADM 818 and making it available to inmates. While the general public may not have access to policy statement DC–ADM 818, the general public is charged with knowledge of the laws of this Commonwealth including the provisions of the Wiretapping Act.

Moreover, each member of the public who receives a collect call from a state correctional facility or who is calling into a facility to speak to an inmate is notified from where the call originates and that the call may be recorded or monitored. This notification permits the member of the general public to reject the phone call if he or she does not wish to be subjected to recording or monitoring.

We also believe that the use of the term "guidelines" by the General Assembly indicates that the department is not required to promulgate "regulations." The term regulation is clearly defined in the Commonwealth Documents Law and the Regulatory Review Act. If the General Assembly intended that the department promulgate regulations as that term is defined in those laws, we believe the General Assembly would have utilized the term regulations instead of guidelines.[10]

10. We are mindful that the use of a specific term such as "guidelines" does not automatically ren-

We remind petitioners that they have conceded before this court that there is no constitutional right to use the telephone.[11] Moreover, with respect to the majority of the items that petitioners claim the department has failed to promulgate governing regulations, most of these items are clearly set forth in the Wiretapping Act. For instance, section 5704 clearly provides which conversations may be recorded. All conversations are subject to recording or monitoring except conversations between an inmate and his attorney. Section 5704 limits who may listen to an intercepted or recorded conversation. Only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee shall have access to the recording. Section 5704 provides that the department shall give notice to the inmates that their telephone conversations may be monitored or recorded and also provides that persons who are calling in to a state correctional facility to speak to an inmate shall be notified that the call may be recorded or monitored. Finally, section 5704 provides that the contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

▪ Accordingly, the failure of the department to promulgate regulations in accordance with the regulatory review process is not a violation of the provision set forth in section 5704 of the Wiretapping Act directing the department to promulgate guidelines to implement the provisions of section 5704 for state correctional facilities.

▪ Finally, we reject petitioners' argument that the department's failure to make DC–ADM 818 known to the public is a deprivation of petitioners', particularly petitioner Borish's, due process rights of notice or opportunity to object to the policy statement. Specifically, petitioners contend that petitioner Borish, as the person who must pay for the collect call from the inmate, has a property and liberty interest.[12] In addition, petitioners argue that petitioner Borish's constitutional right to privacy is being violated by the intercepting, monitoring, or recording of telephone conversations she may have with either petitioner Chimenti or petitioner Vorhauer. We disagree.

der or not render DC–ADM 818 a regulation. As stated previously herein, the courts of this Commonwealth have specifically set forth certain tests for determining whether a document is a regulation which must be promulgated in accordance with the regulatory review process. *Central Dauphin; Norristown Area School District; Rushton Mining Co.*

11. On the question of inmates rights regarding the use of telephones, the Sixth Circuit Court of Appeals has pointed out that:

The Supreme Court has recognized that " '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,' *Turner v. Safley,* 482 U.S. [78] at 84 [107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ] ..., nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside,' *id.,* at 94–99 [107 S.Ct. at 2265–67].... " *Thornburgh v. Abbott,* 482 [490] U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In fact, federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, *Morgan v. LaVallee,* 526 F.2d 221, 225 (2d Cir.1975), and have recognized that "there is no legitimate governmental purpose to be attained by not allowing reason-

able access to the telephone, and ... such use is protected by the First Amendment." *Johnson v. Galli,* 596 F.Supp. 135, 138 (D.Nev. 1984).

Nevertheless, an inmate "has no right to unlimited telephone use." *Benzel v. Grammer,* 869 F.2d 1105, 1108 (8 th Cir.), *cert. denied,* 493 U.S. 895, 110 S.Ct. 244, 107 L.Ed.2d 194 (1989), *citing Lopez v. Reyes,* 692 F.2d 15, 17 (5 th Cir.1982). Instead, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9 th Cir.1986). "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Fillmore v. Ordonez,* 829 F.Supp. 1544, 1563–64 (D.Kan.1993), *aff'd,* 17 F.3d 1436 (10 th Cir.1994), and *citing Feeley v. Sampson,* 570 F.2d 364, 374 (1 st Cir.1978), and *Jeffries v. Reed,* 631 F.Supp. 1212, 1219 (E.D.Wash. 1986).

*Washington v. Reno,* 35 F.3d 1093, 1099–1100 (6th Cir.1994).

12. *See* section 2907 of the Public Utility Code, 66 Pa.C.S. § 2907, requiring that all calls made by inmates shall be collect calls only.

Section 5704 of the Wiretapping Act clearly authorizes the interception or recording of a telephone conversation between an inmate and a member of the general public. Moreover, section 5704 notifies the general public that calls between inmates and members of the general public are subject to interception or recording. In addition, pursuant to section 2907 of the Public Utility Code, each collect call made by an inmate to a member of the general public is preceded by a warning that the call is originating from a state correctional facility and, pursuant to section 5704 of the Wiretapping Act, any call placed by a person calling into a state correctional institution is preceded by a warning that the call is subject to monitoring or recording. As a free citizen, petitioner Borish or any other member of the general public may simply refuse to accept the call and communicate with the inmate in some other manner as, for example, through the mail.

◾ As noted herein, a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. *Washington v. Reno.* The reason for the statutory requirements: (1) that all calls made by inmates shall be collect calls only;[13] (2) that a called party is informed that a call made by an inmate is originating from a correctional institution;[14] and (3) that the department may intercept, record, monitor or divulge any telephone calls from or to an inmate in a state correctional institution except conversations between an inmate and an attorney,[15] is to protect the public from criminal activity on the part of the inmates such as credit card scams, fraud and threats. This is clearly a rational and legitimate reason for requiring that all calls from inmates be collect and that such calls are subject to interception, recording, monitoring or divulging.

Accordingly, we sustain the department's preliminary objections in the nature of a demurrer and dismiss petitioners' petition for review with prejudice.

13. *Id.*

14. *Id.*

*ORDER*

NOW, this 9th day of November, 1998, it is hereby ordered that respondent's preliminary objections are sustained and petitioners' petition for review is dismissed with prejudice.

15. Section 5704 of the Wiretapping Act, 18 Pa. C.S. § 5704.