**Hanford JONES, Appellant**

v.

**CITY OF PHILADELPHIA, Vincent Dougherty, James Cuorato, Sam Katz, Philadelphia Newspapers, Inc., and Michael Smerconish.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2005.

Decided Feb. 16, 2006.

Reargument Denied April 4, 2006.

8.   See 42 Pa.C.S. § 9760.

Robert J. Sugarman, Philadelphia, for appellant.

Eleanor N. Ewing, Philadelphia, for appellees, City of Philadelphia, Vincent Dougherty, and James Cuorato.

Lev Kalman, Philadelphia, for appellee, Sam Katz.

Scott A. Thompson, Philadelphia, for appellee, Philadelphia Newspapers, Inc.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Hanford Jones (Jones) appeals from the orders of the Court of Common Pleas of Philadelphia County (trial court) which sustained the preliminary objections of the City of Philadelphia (City), Vincent Dougherty (Dougherty), James Cuorato (Cuorato), Sam Katz (Katz), Philadelphia Newspapers, Inc. (PNI), and Michael Smerconish (Smerconish)(Collectively, Appellees) and dismissed Jones' third amended complaint with prejudice. We affirm.

Jones alleges that he is a civil service employee working as a Personal and Professional Services Coordinator for Philadelphia Minority Business Enterprise Council (Council). The Council is a government agency charged with promoting affirmative action in government contracts with the City pursuant to the Philadelphia Code § 17–501(2). The Council also operates under the Mayor's Public Order 04–03 and City Ordinance 030125 and is charged with ensuring that minority businesses are afforded equal access and opportunity to compete for and secure contracts in the City.

On April 17, 2003, Jones spoke at an interdepartmental meeting comprised of members from the Council, the City Finance Department and the City Commerce Department. This meeting was held to address lack of minority contracts with the City and to find ways to increase the opportunities for minority contracts with the City. Jones gave examples during his presentation regarding the contracts in the 151 Home Ownership Project on Cecil B. Moore Street. Jones contends that he stated that "none of the professional architectural candidates were ethnic minorities as all were Jewish firms." Third Amended Complaint (TAC) paragraph 18 at 5.[1] Jones was quoted in the newspaper as stating that the developer teams were do-

---

1. Jones commented in his TAC on his statements regarding the 151 Home Ownership Project as follows:

> 18....In that case, the list of architectural consultants consisted entirely of majority firms of Jewish background. Plaintiff, accordingly, in the small, informal professional grouping, consistent with his responsibilities and obligations, observed that none of the professional-architectural candidates were ethnic minorities as all were Jewish firms. His observation could not have been interpreted by any reasonable person as a slur, nor as disrespectful to the Jewish community and was not so interpreted by any person present.
>
> 19. That the names were Jewish was professionally appropriately utilized by plaintiff in the course of his informal, private presentation, as one of many educational examples where staff had seemingly failed to implement the City's outreach program of inclusiveness of proposers-applicants.

TAC paragraph 18–19 at 5–6.

minated by "Jewish architects and Jewish lawyers." TAC Exhibits D, H and Q.[2]

Several persons in attendance at the meeting took offense to Jones' remarks as racial slurs and anti-Semitic. Cuorato, the City Commerce Department Director, received several emails from attendees who were outraged over Jones' comments. Dougherty, the Assistant Director of Commerce and Acting Director, Mayor's Business Action Team for the City's Commerce Department, sent Cuorato an email which described the outrage Jones' remarks caused. The email reads in pertinent part as follows:

> I want to speak about [the Council] presentation and the outrage it generated among some of the attendees.
> Right now, I have a large tempest brewing regarding Hanford Jones' presentation in general but specifically about his comments that all five of the bid/RFP responses on the Amtrak garage project had "Jewish architects and Jewish lawyers." This comment was made in the context that minorities are not getting contracts and/or being denied access to RFP's everywhere. While I 'gulp' at the comment, others at the meeting were extremely upset about the comments. Five (5) of the attendees have come to me to express their outrage. (for the record, the 5 include women and a minority member.) One of the attendees (who happens to be half Jewish) was in tears over this following the meeting.
> . . .
> People are demanding a letter of apology from Hanford as well as from Jim Roundtree and Janice Davis on behalf of [Council].

> This is already a "hot potato" and getting hotter. It needs to be addressed quickly and thoroughly.

TAC Exhibit Q.

Jones contends that this letter resulted in his boss, the City Finance Director, Janice Davis, subjecting him to a demotion and reprimanding him. The trial court found that a letter was placed in Jones' file and Jones was placed on a paid leave of absence and subsequently returned to the same position that he held prior to the controversy.

Approximately two months later the subject continued to be a hot topic of discussion in Philadelphia. On June 4, 2003, the Philadelphia Inquirer reported Katz as stating that:

> [T]his raises serious questions about this administration's commitment to diversity and fairness to all. . . . Hanford Jones owes an apology, but where's the judgment of the Mayor's Office, that something this hateful is acceptable with a mere apology? It's frightening to think this is the way they're talking behind closed doors. Neither racism nor anti-Semitism will be tolerated in the Katz administration. He'd be gone.

TAC Exhibit B.

On June 5, 2003, The Philadelphia Inquirer reported in pertinent part as follows:

> Republican mayoral candidate Sam Katz yesterday condemned Mayor Street for dispensing only a late 'slap on the wrist' on a city official who displayed 'blatant anti-Semitism' in an April meeting of city Commerce Department staff. . . . "I'd give him a letter all right, a letter that says, 'You're fired,'" Katz said on

---

**2.** Other attendees were quoted in newspapers as stating that Jones said that "all these teams are Jews—Jew lawyers and Jew architects" and another person was quoted as saying that he heard Jones say that "all of these teams are Jews—Jew lawyers and Jew architects—and we need to do something about that." TAC Exhibits H, D and Q.

Michael Smerconish's radio talk show on WPHT (1210–AM). . . .

TAC Exhibit E.

The Daily News also quotes Smerconish speaking about Mayor Street as follows:

If you really think you are powerless, then at least say this: "My administration has zero tolerance for anti-Semitism. I wish I could fire Mr. Jones, but I am told that I lack that power. Consequently, I am publicly calling for Mr. Jones to take personal responsibility for his comments by voluntarily resigning."

TAC Exhibit H.

The record contains many other alleged comments and remarks regarding what various people thought of Jones' comment and what should happen to Jones. Nearly two months after making the comment, Jones issued a public apology to the attendees of the April 17, 2003 meeting. Jones stated that he wanted "to ensure everyone that I am not a racist nor anti-Semitic." TAC Exhibit D.

■ On April 15, 2004, Jones filed a complaint against Appellees alleging defamation as well as infringement upon various invasions of privacy rights and intentional infliction of emotional distress. On June 1, 2004, Jones amended the complaint. On June 6, 2004, Jones amended the complaint a second time and on August 5, 2004, the complaint was amended for the third time. Appellees filed preliminary objections to Jones' third amended complaint. The trial court granted the preliminary objections and dismissed Jones' complaint with prejudice. Jones appealed to our Court.[3]

Jones contends that the trial court erred in granting the preliminary objec-

tions when it considered alleged facts not plead by Jones; when it refused to accept as true well-pled allegations of material fact and resolved doubt in favor of the Appellees. Jones further contends that the trial court erred in determining that the false allegation that Jones uttered an anti-Semitic slur did not amount to a potential cause of action for defamation prior to development of a record. Jones contends that the trial court cannot immunize city employees from liability under the Tort Claims Act and dismiss a complaint on preliminary objections where the complaint alleges intentional and willful misconduct, which are excluded from that protection under the Act. Jones further contends that the trial court erred in determining that statements made were not false, when he specifically pled in his complaint that the statements were false. Jones contends that the trial court erred in determining that a suit for publicity to private life was dismissible for failure to plead falsity and privacy where falsity is not an element of the cause of action and the complaint specifically pled that the statements published related to a private and confidential meeting; and whether it is reversible error to sustain preliminary objections and dismiss with prejudice an intentional infliction of emotional distress claim for failure to plead falsity or outrageousness where the complaint specifically pled that the conduct of defendants involved false statements and was an extremely outrageous course of conduct; and did the trial court err in not granting Jones leave to amend where he may be able to correct the deficiencies found in the complaint.

---

**3.** Our review where a trial court sustains preliminary objections and dismisses a complaint is limited to determining whether the trial court committed an error of law or abused its discretion. *Smith & McMaster, P.C. v. Newtown Borough,* 149 Pa.Cmwlth. 356, 613 A.2d 129 (1992).

When reviewing a challenge to an order sustaining preliminary objections in the nature of a demurrer, we must determine whether under the facts alleged the law states with certainty that no recovery is possible. We accept as true all well-pleaded allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom, and resolve any doubt in favor of overruling the demurrer. Preliminary objections calling for dismissal of a cause of action should be sustained only in cases that are clear and free from doubt. *Anelli v. Arrowhead Lakes Comty. Ass'n, Inc.*, 689 A.2d 357 (Pa.Cmwlth.1997).

Pa.R.C.P. No. 1028(c)(2) provides that "[t]he court shall determine promptly all preliminary objections." If an issue of fact is raised, the court shall consider evidence by depositions or otherwise. Pa.R.C.P. No. 1028(a)(4) states that "[p]reliminary objections may be filed by any party to any pleading and are limited to the following grounds ... (4) Legal insufficiency of a pleading (demurrer)...." Preliminary objections raising an issue under subdivision (a)(2),(3) or (4) may be determined from facts of record so that further evidence is not required. Pa.R.C.P. No. 1028 note.

First we will address the trial court's finding of governmental immunity with regard to the City, Dougherty and Cuorato. Governmental immunity is a defense properly raised by preliminary objections. *Scott v. Willis*, 116 Pa.Cmwlth. 327, 543 A.2d 165 (1988). Under 42 Pa. C.S. §§ 8541–8542, commonly referred to as the "Political Subdivision Tort Claims

Act," (Act) local agencies are immune from liability for injuries caused by an act of the agency, its employees or any other person. There are eight exceptions to this Act. The issue surrounding the City does not fall into any of eight exceptions.[4] Section 8545 of the Act grants this same immunity to local agency employees acting within the scope of their official duties. This immunity is abrogated, with respect to individuals only, for conduct which constitutes a crime, actual fraud, actual malice, or willful misconduct.[5] *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994).

Jones contends that the "willful misconduct" exception to immunity applies in this case. In order to prove willful misconduct, Jones must establish that the Appellees desired to bring about the result that followed or at least the result was substantially certain to follow, so that such desire can be implied. *See Robbins v. Cumberland County Children and Youth Services*, 802 A.2d 1239 (Pa.Cmwlth.2002). Willful misconduct must be carried out with the intention of achieving exactly that wrongful purpose. *In re City of Philadelphia Litigation*, 938 F.Supp. 1264 (E.D.Pa. 1996). Section 8550 of the Act states that:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally) ... shall not apply.

4. The eight exceptions that allow liability to be imposed on a local agency are as follows: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) side-walks; and (8) care, custody, or control of animals. 42 Pa.C.S. § 8542.

5. The exceptions to the Act must be narrowly construed. *Kiley v. City of Philadelphia*, 537 Pa. 502, 645 A.2d 184 (1994).

42 Pa.C.S. § 8550. In the present controversy, Jones does not specifically allege that the Appellees acted with the requisite intent to injure Jones or that Jones was actually injured. Also, our courts have previously found cities immune from defamation actions. *Five Star Parking et al v. Philadelphia Parking Authority*, 662 F.Supp. 1053 (E.D.Pa.1986). Therefore, the trial court did not err in finding that the City, Dougherty and Cuorato had governmental immunity and in granting their preliminary objections.

Next, we must address the remaining Appellees. First we must determine whether Jones alleged a falsity in the false light claim of his complaint. False light is defined in the Restatement (Second) of Torts in pertinent part as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.

In *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 848 A.2d 113 (2004), our Supreme Court sustained preliminary objections for failing to adequately plead "actual malice". A plaintiff must plead sufficient facts such that a jury could eventually conclude, by clear and convincing evidence, that the statements at issue were false. *Id.* at 624–628, 848 A.2d at 130–131.

■ In the present controversy, the trial court found that Jones failed to plead sufficient facts such that a jury could conclude by clear and convincing evidence that Appellees' remarks that Jones' statements were "anti-Semitic" were false.[6] In *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983), our Superior Court found that accusations of anti-Semitism were not defamatory, but rather a protected fundamental right to express views about the character of other people. The trial court found that the term "anti-Semitic" as used in this case was not defamatory, but was protected speech under the First Amendment. *Id.*

In reviewing Appellees' statements, the trial court found that they had an objectively verifiable factual content. Therefore, the trial court found that the statements were substantially true and not actionable under claims requiring proof of falsity as an element. The trial court looked at the purpose of the meeting, the Council's role to ensure equal opportunity for minority businesses in contracting and Jones' presentation. The trial court found that instead of identifying and discussing ways minorities could better compete for public contracts, Jones "chose to isolate and discriminate against a minority." Trial Court Opinion at 13. The trial court found that the reference to "Jewish architects and Jewish lawyers" was unnecessary and had "no other purpose than to express hostility or discrimination toward this class of individuals." Trial Court Opinion at 13. The

6. "Anti–Semitism" is defined as "hostility toward or discrimination against Jews as a religious, ethnic, or racial group." Merriam Webster's Collegiate Dictionary 52 (10th Ed.1994). Discrimination is defined as "The effect of a law or established practice that confers privileges on a certain class or that denies privileges to a certain class because of race, age, sex, nationality, religion, or handicap." Black's Law Dictionary 500 (8th Ed.2004).

trial court determined that Jones' comments could have been, and actually were, construed as "slurs" and "anti-Semitic." Thus, as Jones failed to prove the falsity element, the trial court was correct in finding that his claim of false light must fail.

Next, we will address Jones' claim for publicity to private life. A person will be held liable to another for invasion of privacy when one "gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man...." *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 130, 327 A.2d 133, 136 (1974). A requirement of this tort is that the publicity involve a private fact. One cannot base liability upon something that is open to the public eye. *Harris v. Easton Pub. Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984). Jones contends that the meeting was private. The trial court found that the meeting was public, as the Council is a governmental agency and the meeting included attendees from other public service sectors. The trial court was correct in determining that there was no private fact that was made public and therefore, that Jones' claim for publicity to private life must fail.

Next, we will address Jones' claim of defamation. Defamation is established when it is shown that a defendant: 1) made a defamatory communication 2) about the plaintiff; 3) that was published to a third party, 4) who understood the defamatory meaning of the communication about the plaintiff, 5) where the plaintiff suffered special harm as a result of the publication of the communication, and 6)

that any privilege invoked by the defendant was abused. 42 Pa.C.S. § 8343.

In the present controversy, Jones alleges that Appellees have published false statements of fact. The trial court found that Jones did not allege a false statement of fact, and therefore the defamation claim must fail. The trial court found that Appellees presented Jones' statement at the meeting and then stated their own opinions in classifying Jones' statements as a "slur" against Jews and "anti-Semitic." The trial court found that the statements constituted "pure" opinion which is protected under the state and federal constitutions.[7] We find that the trial court did not err in finding that "pure" opinion is protected under the state and federal constitutions and that Jones did not have a claim for defamation against Appellees.

Next, we address Jones' contention of intentional infliction of emotional distress. In finding a defendant liable for intentional infliction of emotional distress, a plaintiff must allege that the defendant "has acted with intent which is tortious or even criminal, or that he had intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998). As Jones is a public official, he must show that "the publication contains a false statement of fact which was made ... with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Reiter v. Manna*, 436 Pa.Super. 192, 201, 647 A.2d 562, 567 (1994). As the trial court stated before, they found that

7. The trial court cited *Braig v. Field Communications*, 310 Pa.Super. 569, 456 A.2d 1366 (1983) as follows: "[i]f defendant states certain non-defamatory facts concerning the plaintiff, on the bases of which he expresses a defamatory opinion, Comment c to Section 556 recognizes that this 'pure' expression of opinion is absolutely privileged as a result of *Gertz [v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)]."

the publications submitted as evidence by Jones contained mere statements of fact with "pure opinion" of Jones' conduct afterwards. The trial court found no false statement, just opinion. Therefore, Jones failed to meet the criteria for proving intentional infliction of emotional distress.

Finally, we address Jones' contention that the trial court abused its discretion in failing to allow him leave to amend his complaint. "[W]here a trial court sustains preliminary objections on the merits, it is generally an abuse of discretion to dismiss a complaint without leave to amend." *Harley Davidson Motor Co. v. Hartman*, 296 Pa.Super. 37, 442 A.2d 284, 286 (1982). If it is possible that the pleading can be cured by amendment, a court "must give the pleader an opportunity to file an amended complaint. . . . This is not a matter of discretion with the court but rather a positive duty." *Framlau Corporation v. County of Delaware*, 223 Pa.Super. 272, 299 A.2d 335 (1972).

In the present controversy, Jones made a statement at the meeting. That statement was construed as anti-Semitic. As we agree with the trial court's finding that there was "no false statement, only pure opinion," we are constrained to find that there is no way the pleading can be cured by an amendment. Where there is no possibility of recovery under a better statement of the facts, leave to amend need not be granted.

Accordingly, we affirm the decision of the trial court.

Smith–Ribner, J., concurs in result only.

### ORDER

AND NOW, this 16th day of February, 2006 the order of the Court of Common

Pleas of Philadelphia County in the above-captioned matter is affirmed.