IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Talbert,                          :
                    Petitioner            :
                                          :
          v.                              :    No. 78 M.D. 2022
                                          :    Submitted: September 30, 2022
George Little,                            :
                    Respondent            :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                      FILED: February 3, 2023

          Charles Talbert (Talbert), a *pro se* inmate, has filed a petition for review
in this Court's original jurisdiction against George Little (Little), the then-Acting
Secretary of the Pennsylvania Department of Corrections (DOC).[1]  Talbert contends
that Little violated his constitutional right to phone access and that Little
intentionally and negligently inflicted emotional distress by depriving him of that
right.  Little has filed preliminary objections, and Talbert has filed an application for
summary relief.  We sustain Little's preliminary objections, grant Talbert leave to
file an amended petition for review within 30 days of this decision and order, and
dismiss Talbert's application for summary relief as moot.

---

[1] Courts have labeled Talbert a serial litigant.  *Talbert v. City of Phila.*, No. 21-4303, 2021
WL 4552390 (E.D. Pa., Oct. 5, 2021); *accord Talbert v. Carney*, No. 18-1620, 2018 WL 4839038
(E.D. Pa., Oct. 3, 2018); *Talbert v. Carney*, No. 18-1620, 2018 WL 3520676, *1 (E.D. Pa., July
20, 2018) (noting filing of "almost three dozen lawsuits over the past couple of years").

# I. BACKGROUND

We state the facts as gleaned from the pleadings.[2]  During the COVID pandemic, Talbert was housed in "segregated restrictive housing."  Pet. for Rev., 2/25/22, ¶ 6.[3]  Talbert alleges that John Wetzel, the prior Secretary of DOC, permitted all inmates in segregated restrictive housing to use the phone to speak with their families.  *Id.* ¶ 6.  Talbert claims that after Little assumed his post as Acting Secretary of DOC, he "refused to allow segregated inmates . . . to communicate with their loved ones."  *Id.* ¶ 8.  Talbert contends that "due to his father being sick and of old age, [he] was unable to communicate with him by letter."  *Id.* ¶ 7.  As a result of Little's actions, Talbert alleges that he "lost all forms of available communication," and was unable to communicate with his father before he passed away.  *Id.* ¶¶ 9-11.[4]  Consequently, Talbert alleges he suffered emotional distress and other related injuries.  *Id.* ¶ 13.

Talbert raises three counts: (1) violation of article I, section 7 of the Pennsylvania Constitution; (2) violation of the First Amendment of the United States Constitution; and (3) intentional infliction of emotional distress.  *Id.* ¶¶ 14-27.[5]  The

---

[2] "[W]e must . . . accept as true all well-pleaded, material, and relevant facts alleged in the [petition for review] and every inference that is fairly deducible from those facts."  *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (cleaned up).  Also, "we are generally inclined to construe *pro se* materials liberally."  *Robinson v. Schellenberg*, 729 A.2d 122, 124 (Pa. Cmwlth. 1999).

[3] The docket reflects a filing date of February 23, 2022, but the legible timestamps reflect a filing date of February 25, 2022.  Because of other similar date discrepancies in the record, we refer to either the dates set forth in any attached certificates of service or the timestamped dates if such certificates were not attached.  *See generally Thomas v. Elash*, 781 A.2d 170, 176 (Pa. Super. 2001) (holding that "the prisoner mailbox rule applies to all *pro se* legal filings by" prisoners).

[4] In other words, although Talbert alleges he lost "all . . . available" forms of communication, Talbert did not explicitly plead that Little denied Talbert all means of communicating with Talbert's father.

[5] Pa. Const. art. I, § 7; U.S. Const. amend. I.  We acknowledge that Talbert labels his third count as intentional *and* negligent infliction of emotional distress.  But Talbert specifically alleges

2

essence of Talbert's state and federal constitutional claims is that Little deprived Talbert of his constitutional right to free speech by discontinuing only phone access during the pandemic. *Id.* ¶¶ 15-16, 20, 23. Talbert seeks money damages and mandatory injunctive[6] relief in the form of phone access once every three days until the pandemic is over. *Id.* at 4-5 (*ad damnum* clauses) & Order. On March 25, 2022, this Court ordered that Little file a responsive pleading within 30 days. Order, 3/25/22.

Little filed preliminary objections in the nature of a demurrer. *See generally* Prelim. Objs., 4/25/22. Little asserts (1) that Talbert has no protected interest in phone access; (2) there is no private cause of action for money damages under the state constitution; (3) sovereign immunity; and (4) qualified governmental immunity. *See generally id.* Talbert filed a timely answer in the form of a brief, Answer to Prelim. Objs., 5/13/22, and also filed another court-ordered brief in opposition. Br. in Opp'n, 6/2/22.[7]

## II. DISCUSSION

In support of his preliminary objections, Little argues that Talbert is not in the general population and is housed in the restricted housing unit under disciplinary custody. Little's Br. at 7. Therefore, Little maintains that Talbert had

that Little's acts and omissions deprived Talbert of "his constitutional right to communicate" and was "for the purpose of *knowingly* causing" him emotional distress. Pet. for Rev., ¶ 25. Thus, we construe Talbert's claim as limited to intentional infliction of emotional distress. *Cf. Stackhouse v. Commonwealth*, 832 A.2d 1004, 1009 (Pa. 2003) (explaining that courts review the substance, and not the label, of the claim to resolve a court's jurisdiction).

[6] Generally, mandatory injunctions "command the performance of some positive act to preserve the *status quo*" and prohibitory injunctions "enjoin the doing of an act that will change the *status quo*." *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981).

[7] Talbert also filed a motion for a preliminary injunction and a temporary restraining order, which this Court denied. Order, 4/27/22. Talbert appealed to our Supreme Court, which affirmed. *Talbert v. Little* (Pa., No. 17 EAP 2022, filed Jan. 19, 2023) (*per curiam*).

3

no right to unlimited phone access, particularly when he had other forms of communication available, including "written communication, visitation, or virtual visitation." *Id.* at 8 (stating that Talbert "has other means of communicating with family"). Because Talbert is housed in "disciplinary segregation [and he] has other means of communicating" with his father, Little asserts that we should dismiss Talbert's constitutional claims. *Id.* at 8-9. Little also reasons that (a) sovereign immunity bars Talbert's claims, including his request for a mandatory injunction and his intentional tort claims, and (b) there is no private cause of action for money damages under the Pennsylvania Constitution. *Id.* at 10-11.[8]

A "demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law[.]" *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (cleaned up). We sustain a demurrer only when the law undoubtedly precludes recovery. *Id.* If doubt exists, then we should overrule the demurrer. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005).

In resolving the legal sufficiency, we review the initiating pleading to determine whether it apprises "the [respondent] of the claim being asserted and summarize[s] the essential supporting facts," as "Pennsylvania is a fact-pleading state." *Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.*, 90 A.3d

---

[8] Talbert counters that he has a federal constitutional and statutory right to speak with his family, specifically his *grandmother*, and he sufficiently alleges a violation of that right. Br. in Opp'n at 3-5 (unpaginated). Although Talbert's *petition* for review alleges Talbert was unable to communicate with his *father*, Talbert's *brief* in opposition to Little's preliminary objections alleges he is unable to communicate with his *grandmother*. *Id.* at 4-5. In any event, Talbert argues that caselaw does not support DOC's policy, which prohibits inmates with "disciplinary custody" status from using the phone. *Id.* at 4-6. Talbert also contends that Little has no sovereign immunity as an officer of the Commonwealth and has no qualified immunity. *Id.* at 7.

Neither party addressed whether a prisoner subjected to disciplinary custody status has a right to phone access under the Pennsylvania Constitution. *See generally S.B. v. S.S.*, 243 A.3d 90, 112 (Pa. 2020) (noting that under "certain circumstances," article I, section 7 of the Pennsylvania Constitution provides broader freedom of speech than its federal counterpart).

682, 694 & 694 n.14 (Pa. 2014) (*Bricklayers*) (cleaned up). But if we sustain a demurrer, and "it is possible that the pleading can be cured by amendment, a court must give the pleader an opportunity to file an amended" petition for review. *Jones v. City of Phila.*, 893 A.2d 837, 846 (Pa. Cmwlth. 2006) (cleaned up).

By way of background, the First Amendment protects an inmate's right to (a) communicate with family and friends and (b) reasonable access to and use of a phone. *Chimenti v. Pa. Dep't of Corr.*, 720 A.2d 205, 213 n.11 (Pa. Cmwlth. 1998). But an inmate "has no right to unlimited telephone use," and a prison may impose "rational limitations" based on "legitimate security interests." *Id.* (cleaned up); *accord Snider v. Pa. Dep't of Corr.*, 505 F. Supp. 3d 360, 433 n.359 (M.D. Pa. 2020); *Almahdi v. Ashcroft*, 310 Fed. App'x 519, 522 (3d. Cir. 2009) (*per curiam*).[9]

Prison-imposed "rational limitations" are "likely to be considered reasonable" "where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail . . . ." *Pumba v. Miller*, No.

---

[9] In *Almahdi*, the inmate alleged that the prison's restrictions on his phone use violated his First Amendment right. *Almahdi*, 310 Fed. App'x at 521-22. The *Almahdi* Court affirmed the grant of summary judgment adverse to the inmate, reasoning that the inmate made "no assertion" and there was "no evidence" that the inmate "lacked alternative means of communicating with persons outside the prison." *Id.* at 522 (citation omitted). We acknowledge that most federal court decisions, including non-precedential decisions in the Federal Appendix reporter, do not bind this Court. *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (*NASDAQ*); *accord O'Toole v. Pa. Dep't of Corr.*, 196 A.3d 260, 271 n.15 (Pa. Cmwlth. 2018). However, it is appropriate to follow Third Circuit decisions "in preference to that of other jurisdictions," to preclude litigants from achieving "a different result in federal court than would be obtained in state court." *See NASDAQ*, 52 A.3d at 303 (citation omitted).

Nonetheless, we observe that in *Pope v. Hightower*, 101 F.3d 1382 (11th Cir. 1996), the Eleventh Circuit held that a prisoner's First Amendment right to communicate with his family was not violated by the prison's policy limiting phone contact because the prisoner "had alternate means of exercising this right" including receiving visitors and correspondence. *Pope*, 101 F.3d at 1385. The *Pope* Court noted that the "availability of other avenues suggests that we should be particularly conscious of the measure of judicial deference owed to correctional officials in gauging the validity of the regulation." *Id.* (cleaned up).

22-2050, 2022 WL 2757371, *5 (E.D. Pa., July 14, 2022) (*Pumba I*) (citing *Almahdi*, 310 Fed. App'x at 522). "Legitimate security interests" include whether the inmate is in the general population or in disciplinary segregation, *i.e.*, segregated restricted housing. *See generally Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1277 (Pa. Cmwlth. 2021). For example, inmates "in general population may make phone calls" in accordance with the applicable statutes and DOC policies. 37 Pa. Code § 93.7. In contrast, inmates in disciplinary custody status, like Talbert, have no phone privileges absent staff approval. DC-ADM, § 6, at 6-1 (explaining that the "Program Review Committee" may approve phone privileges).[10]

For instance, in *Pumba v. Miller*, No. 22-2050, 2022 WL 11804036 (E.D. Pa., Oct. 20, 2022) (*Pumba II*), a prisoner was placed in disciplinary segregation. *Pumba II*, 2022 WL 11804036, at *6. The *pro se* prisoner alleged that for 17 months, he was not permitted to have any "telephone calls, have a visitor, send or receive mail, or otherwise communicate with friends or family." *Id.* The *Pumba II* court reviewed the *pro se* complaint to resolve whether it raised a cognizable claim. *Id.* at *3. The court held that because the prisoner raised "a plausible First Amendment claim" for a complete deprivation of communication against one of the defendants, the claim could proceed. *Id.* at *6.

Few courts, however, have addressed the issue of a prisoner's First Amendment right to use the phone to communicate with family during a pandemic. In *McGlory v. Michigan Department of Corrections*, No. 2:20-cv-81, 2020 WL 4362307 (W.D. Mich., July 30, 2020), the prisoners alleged that their inability to call

---

[10] We may take judicial notice of DOC's policies, such as DC-ADM 801, which states the general procedures and guidance for disciplinary custody status inmates. *Dunbar v. Wetzel* (Pa. Cmwlth., No. 75 M.D. 2019, filed Jan. 21, 2020) (*per curiam*), slip op. at 1 n.1, 2020 WL 283899, *1 n.1.

their families during an eight-day quarantine following exposure to COVID violated their First Amendment right. *McGlory*, 2020 WL 4362307, at *3. The *McGlory* Court dismissed the prisoners' claim because the phone restriction appeared "to be rationally related to the need to prevent possible spread of COVID-19." *Id.* at *3, 7.

Similarly, in *Pringle v. Jose*, No. 21-cv-00648, 2021 WL 1893141 (N.D. Cal., May 7, 2021), a *pro se* prisoner alleged that the prison denied him his First Amendment right to phone access, apparently due to the prison's efforts to inhibit the transmission of COVID. *Pringle*, 2021 WL 1893141, *2. The *Pringle* court dismissed the prisoner's complaint, reasoning, *inter alia*, that the prisoner must allege additional facts as to whether he "was able to communicate with persons outside the jail by means other than a telephone." *Id.*

In *Rodriguez v. Newsom*, No. 1:20-cv-01792, 2022 WL 783722 (E.D. Cal., March 15, 2022), a *pro se* prisoner alleged that he was improperly quarantined and thus could not use the phone to communicate with his sick mother. *Rodriguez*, 2022 WL 783722, *3. The district court dismissed the complaint, reasoning that the prisoner needed to supply additional facts including the terms of his phone privileges and whether he was allowed to correspond with his mother using other forms of communication. *Id.* at *4; *see Butler v. Colon*, No. 1:20-cv-25123, 2022 WL 1301720, *4 (S.D. Fla., Mar. 22, 2022) (dismissing the *pro se* prisoner's complaint that he could not communicate with his family by phone because the record reflected he could use the mail).[11]

---

[11] Notwithstanding *Chimenti*, the *Rodriguez* court distinguished between the prisoner's First Amendment right to phone access and the prisoner's constitutional right to associate with his sick mother. *Rodriguez*, 2022 WL 783722, *3-4. "Courts have not clearly defined the scope of this right, the extent to which it survives incarceration or whether it arises from the First Amendment or the substantive due process component of the Fourteenth Amendment[,]" U.S. Const. amend. XIV. *Id.* at *4 (cleaned up). One court dismissed a *pro se* prisoner's constitutional

Finally, with respect to intentional tort claims, this "Court has held that when an employee of a Commonwealth agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992) (citation omitted); *accord Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmwlth. 2013). With respect to relief, "sovereign immunity bars claims seeking mandatory injunctions to compel affirmative actions by Commonwealth officials[.]" *Stackhouse v. Pa. State Police*, 892 A.2d 54, 61 (Pa. Cmwlth. 2006) (citation omitted).

Initially, Little asserts that Talbert has no constitutional right to a telephone while in disciplinary custody. Little's Br. at 7-8. Little, however, cites no relevant Pennsylvania caselaw and did not identify any legitimate security interests in restricting telephone privileges to inmates in disciplinary custody. *Id.* at 8; *Chimenti*, 720 A.2d at 213 n.11. Little also fails to discuss why Talbert's state constitutional claim was legally insufficient. While Little correctly notes that he is protected by sovereign immunity for any intentional torts, the defense is valid only if he acted within the scope of his employment. *See La Frankie*, 618 A.2d at 1149. Talbert, however, does not allege any relevant supporting facts whatsoever as to Little's employment. *See generally Bricklayers*, 90 A.3d at 694. On the other hand, assuming Talbert raises valid constitutional claims, we agree with Little that Talbert's requested remedy—a mandatory injunction commanding phone access—is barred by sovereign immunity. *See Stackhouse*, 892 A.2d at 61.

---

right of association claim, which was grounded in the prison's ban on visitation. *Watford v. Leabough*, No. 3:20-cv-676, 2022 WL 363957, *10 (E.D. Va., Feb. 7, 2022). The *Watford* court noted that the visitation ban promoted a valid prison objective of inmate safety and that the prisoner had alternative means of communicating with his family, including phone calls and letters. *Id.*

We recognize that federal courts have dismissed *pro se* complaints raising claims similar to Talbert's claims. *See, e.g.*, *McGlory*, 2020 WL 4362307, at \*7; *Pringle*, 2021 WL 1893141, at \*2; *Rodriguez*, 2022 WL 773722, at \*4. But because we liberally construe *pro se* pleadings, *see Robinson*, 729 A.2d at 124, and because we are reluctant to conclude that the law precludes recovery based on Little's scant legal arguments, we hold that Talbert may amend his petition for review. *See Jones*, 893 A.2d at 846. We add that this will permit Talbert a chance to resolve the factual discrepancies involving his grandmother and father, revise his requested relief, and amend his claims to include all essential supporting facts. *See Bricklayers*, 90 A.3d at 694; *Stackhouse*, 892 A.2d at 61.

## III. CONCLUSION

Accordingly, we sustain Little's preliminary objections, dismiss the petition for review without prejudice, grant Talbert leave to file an amended petition for review within 30 days of the date of this decision and order, and dismiss Talbert's application for summary relief as moot.

_____
LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Talbert,
     Petitioner

v.

George Little,
     Respondent

:
:
:
:  No. 78 M.D. 2022
:
:
:

# **O R D E R**

AND NOW, this 3rd day of February, 2023, we sustain the preliminary objections filed by George Little, dismiss the petition for review filed by Charles Talbert (Talbert) without prejudice, grant Talbert leave to file an amended petition for review within 30 days of the date of this decision and order, and dismiss Talbert's application for summary relief as moot.

LORI A. DUMAS, Judge